In the Matter of JAMES BARBER, Petitioner, v ISAAC RUBIN, as Justice of the Supreme Court of the State of New York, Respondent.

Second Department, February 4, 1980

## APPEARANCES OF COUNSEL

*Stephen J. Pittari (David B. Weisfuse* of counsel), for petitioner.

*Carl A. Vergari, District Attorney (Gerald D. Reilly, Michael E. Halkitis* and *Anthony J. Servino* of counsel), for respondent.

## OPINION OF THE COURT

HOPKINS, J. P.

The petitioner has been indicted for murder in the second degree and other crimes. The clenched fist of the victim contained a number of human hairs. The Supreme Court, on application of the District Attorney, granted an order permitting a physician to extract hairs, including roots, from the petitioner's head, for use as specimens to determine whether the hairs found in the victim's hand had come from the petitioner.

The petitioner then brought this article 78 proceeding to prohibit the enforcement of the order of the Supreme Court. We held the application in abeyance and remitted it for an evidentiary hearing probing the necessity of the procedure for the removal of the hair, the degree of the invasion into the petitioner's body, the degree of harm to which the petitioner might be exposed, and the probative value of the evidence sought *(Matter of Barber v Rubin,* 65 AD2d 811).

█ The hearing has been held and the evidence presented

has been considered by us.[1] We hold that, based on that evidence and the teaching of *People v Allweiss* (48 NY2d 40), the petition should be denied and the proceeding dismissed. Sufficient facts demonstrating necessity and probable cause have been established warranting the order of the Supreme Court. The petitioner will not be subjected to either an unnecessary exposure of harm or an impermissible invasion of his person.

I

On April 25, 1978 the petitioner was indicted for murder in the second degree, arson in the second degree, grand larceny in the third degree, and criminal possession of a weapon in the fourth degree. On July 7, 1978 the People moved in the Supreme Court for an order permitting the extraction of hairs from the head of the petitioner. That motion was supported by an affidavit of an Assistant District Attorney, asserting that the victim of the homicide had been strangled, and that the autopsy had revealed hair in the victim's hand.

The Supreme Court by order dated July 17, 1978 permitted a physician to extract hairs from the petitioner's head with his attorney present.

Thereafter, the petitioner instituted this proceeding under CPLR article 78 to prohibit the enforcement of that order.[2] The petitioner contended that the order, having been granted without a hearing, exceeded the jurisdiction of the court and violated the petitioner's constitutional rights of due process and his protection against unreasonable searches and seizures under the State and Federal Constitutions. In turn, the respondent moved to dismiss the proceeding, on the ground, among others, that prohibition was not the proper remedy.

We held the proceeding in abeyance and remitted it for an evidentiary hearing probing the necessity of the procedure for the removal of the hair, the probative value of the evidence sought, the degree of invasion into the petitioner's body, and the harm to which he might be exposed *(Matter of Barber v Rubin,* 65 AD2d 811, *supra).*

---

1. The parties have stipulated that the hearing was properly before the County Court Judge presiding, and have waived the making of findings by the court hearing the evidence. Accordingly, we make the findings stated herein.

2. The proceeding was initiated by an order to show cause containing a stay of the order pending the determination of the proceeding. That stay has continued.

At the hearing testimony was received from a chemist employed at the New York State Police Laboratory, a special agent of the Federal Bureau of Investigation assigned to the F.B.I. laboratory in Washington, D. C., a physician and a detective who had investigated the homicide. From this testimony, it appears, and we find, that hair found in the victim's hand had been compared with the victim's own hair and determined through analysis to be dissimilar; that with the use of proper samples, an expert in the field can conclude with a reasonable degree of certainty whether hair from an unknown source matches the hair from a known source; that hair samples microscopically alike or closely similar can be said with a high degree of probability to have originated from the same source; that no standards have yet been set in the field for hair comparisons; that hair samples can be gathered with minimal pain and without an invasive surgical procedure or danger of harm to the donor; that the petitioner had been a roomer in the victim's home; and that the victim's car had been missing and seen in the petitioner's possession on the night of the homicide, and had been recovered thereafter while in the petitioner's possession.

The petitioner argues that the hair sought to be obtained from him would be inconclusive and prejudicial, because no scientific standards have been established for the procedure or for the analysis to be carried out for the examination and comparison of the hair. Moreover, he urges that probable cause does not exist for the necessity of the extraction of hair from him.

These issues, and the initial issue raised by the People at the time this proceeding was brought, that prohibition is not the proper remedy to test the right of the People to obtain hair samples from the petitioner, we now discuss.

## II

We recognize that prohibition is not traditionally a method of appellate review. Indeed, the statute forbids its use when an appeal is available (CPLR 7801, subd 1). Especially it is true that resort to prohibition directed toward a criminal proceeding should not be made, unless the jurisdiction of the court itself is untenable *(Matter of Steingut v Gold,* 42 NY2d 311, 315; *La Rocca v Lane,* 37 NY2d 575, 578-580). In *La Rocca v Lane (supra,* pp 579-580), Chief Judge BREITEL outlined several factors which influence the appropriate maintenance

of the proceeding: (1) the gravity of the harm which might be caused by the action of the court against which the remedy would be invoked; (2) the adequacy of correcting the action of the court by appeal or other means; (3) the duration of time which correction by appeal or other means will take; and (4) the nature of the right—whether constitutional or common law—which may be infringed.

■■ Surveying these factors, we think that in this case the remedy of prohibition lies to review the order of the Supreme Court permitting the removal of the petitioner's hair, although on the merits, as the Court of Appeals decided in *La Rocca,* we hold that the Supreme Court properly exercised its discretion in granting the order. First, we observe that no appeal from the order is available to the petitioner (see *Matter of District Attorney of Kings County v Angelo G.,* 38 NY2d 923).

■ We do not consider that *People v Vega* (51 AD2d 33) holds otherwise. In that case, Vega, a defendant in a criminal proceeding in another county, was directed to be turned over to the District Attorney of Queens County, his beard removed, and placed in a lineup to be viewed by witnesses to certain robberies. The original order had been made ex parte by the Supreme Court, Queens County. Vega was not the subject of any criminal proceeding in Queens County. We determined that the order was essentially civil in character, since no criminal proceeding was extant in Queens County, and that an appeal was the proper manner of review *(Matter of Blumenfeld v Dubin,* 49 AD2d 593). We thereafter entertained an appeal from an order denying a motion to vacate the ex parte order. The facts are distinguishable; here the petitioner is a defendant in a criminal proceeding in Westchester County and the order permitting the extraction of his hair is manifestly directed toward the ultimate use of the evidence against him in the very criminal proceeding pending in Westchester County.

It is of course incontrovertible that in the event the petitioner were convicted, the procedure of obtaining the hair by the order and the admissibility of the evidence so procured could be challenged on appeal. Nevertheless, we perceive clear disadvantages to the petitioner and others who may be the subject of similar orders involving the compulsory examination of their person or requirements impinging on their liberty, if review of the propriety of the constraint is not pro-

vided and instead a determination is delayed for months or even years. The criteria of probable cause and necessity to justify the order should be promptly applied, lest the rights of the individual may needlessly be violated (cf. *United States v Harris,* 453 F2d 1317, cert den 412 US 927; *State v Fierro,* 107 Ariz 479; *Wise v Murphy,* 275 A2d 205 [DC]). We should avoid this dilemma by authorizing an immediate test of the compulsion through prohibition, in the light of the gravity of the possible harm to the individual, the length of time an appeal from a conviction would endure, and the fact that the compulsion may indeed implicate a serious invasion of the individual's constitutional rights, if not corrected at once.

Consistent with these considerations, it is now a rule of general application that the claim of former jeopardy, though cognizable by a motion to dismiss the indictment expressly prescribed by statute (CPL 210.20, subd 1, par [e]), may also be raised by prohibition *(Matter of Di Lorenzo v Murtagh,* 36 NY2d 306, 309; *Matter of Kraemer v County Ct. of Suffolk County,* 6 NY2d 363, 365). The same salutary principles of protecting a defendant from the prejudice of delay by sanctioning the use of prohibition in deciding claims of former jeopardy are apposite under the circumstances here.

We therefore move to the merits.

## III

Before an individual may be compelled to submit to an examination or a test of his body, the results of which may be used in the investigation or prosecution of a criminal offense, probable cause for the necessity of the procedure proposed must be demonstrated *(United States v Harris,* 453 F2d 1317, cert den 412 US 927, *supra; United States v Woods,* 544 F2d 242, cert den *sub nom. Hurt v United States,* 429 US 1062; *United States v Praigg,* 336 F Supp 480; *Matter of Fingerprinting of M. B.,* 125 NJ Super 115; *Wise v Murphy,* 275 A2d 205 [DC], *supra; State v Fierro,* 107 Ariz 479, *supra).*

■ Here the People established probable cause by linking the petitioner to the place where the homicide had been committed, by showing that the petitioner was in possession of the victim's car after the homicide, and by proving that the autopsy had disclosed that the victim's hand had grasped hairs not her own. Put together, these facts were sufficient to warrant an examination of the petitioner's hair in aid of his prosecution under the indictment, provided that the procedure

which such an examination required did not entail an impermissible invasion of the petitioner's rights. That is to say, the petitioner's constitutional right to be left alone demands that the State satisfy the conditions precedent before that right may be suspended—that probable cause for the invasion be demonstrated, and that the invasion be the minimum required and not involve unreasonable danger or potential harm to the individual.

The compulsion exerted on the individual is little more than the direction found reasonable in *People v Cwikla* (46 NY2d 434, 443-444) that the defendant don a wig and facial hairs while sitting in a lineup. As the Court of Appeals said (at pp 443-444): "In the circumstances of this case, it was not error to compel defendant to conform his appearance at the lineup to his appearance at the time of the crime. Similar orders have been upheld in a variety of circumstances. For the purpose of facilitating identification, it has been held permissible to require a defendant to wear strips of tape on his face and repeat words which had been used by the criminal participants *(United States v Wade,* 388 US 218); to model a blouse *(Holt v United States,* 218 US 245); to wear a scarf partially covering his face *(United States v Gaines,* 450 F2d 186, cert den 405 US 927); to wear an artificial goatee *(United States v Hammond,* 419 F2d 166, 168, cert den 397 US 1068); and to wear a wig *(United States v Boatwright,* 425 F Supp 747, 752-753). Thus, defendant's constitutional privilege against self incrimination was in nowise violated. Additionally, requiring defendant to wear a wig in this instance was not a significant infringement of the right, if any, which he may have to determine his appearance; he could have immediately returned to his prior appearance following his participation in the lineup by merely removing the wig."

The petitioner's appearance will not be materially altered by the procedure authorized here, nor surely his privilege against self incrimination violated. Thus, as under *Cwikla,* we see no constitutional rights of the petitioner violated by the order of the Supreme Court here.

## IV

It is self-evident that the circumstances of each case regulate the permissible degree of intrusion into the rights of the individual. In this case, the order of the Supreme Court directed that the taking of the hair samples should be carried

out by a physician. The evidence produced at the hearing was convincing that the method of extraction involves neither unreasonable danger nor potential harm to the petitioner.

Doctor Felsenstein testified at the hearing that a hair sample may be achieved by the use of a rubber-tipped hemostat and a quick withdrawal of the hairs thus secured by a single pull, yielding at least 50 hairs. He said that though there may be momentary discomfort, no damage by this procedure results to the scalp and the hair grows back. No medication is administered and blood does not flow. No entrance of an instrument into the skin is necessary. The chance of infection is remote.

Hence, we conclude that the invasion envisioned by the procedure is minimal and the danger or harm to the petitioner slight.

At the time of our remand to the Supreme Court for the purposes of the hearing *(Matter of Barber v Rubin,* 65 AD2d 811, *supra),* we were concerned whether the use of hair samples in the investigation or prosecution of a crime was of such little value or probative force that the conclusions drawn from the comparison of the hair sample taken from the petitioner with the hair found in the hand of the victim would be inadmissible at a trial, thus rendering doubtful the necessity for the procedure ordered by the court. We think this question has been largely answered by the Court of Appeals in *People v Allweiss* (48 NY2d 40, 49-50, *supra).*

In *Allweiss,* the defendant contended that opinion evidence from the People's expert to the effect that hair in the victim's mouth had come from the defendant was inadmissible, because the analysis used was unreliable. Judge WACHTLER treated this contention by saying *(supra,* p 50): "Here, of course, the expert was not asked to assess credibility, and his testimony satisfied the general requirements applicable to expert proof. We also note that the value of hair analysis, with its limitations, is recognized by legal scholars (see, e.g., Moenssens & Inbau, Scientific Evidence in Criminal Cases, pp 405-414; McCormick, Evidence, § 206, p 503) and is routinely accepted by courts in other jurisdictions (see, e.g., *People v Abbott,* 47 Cal 2d 362; *Padilla v The People,* 156 Col 186; *People v Kirkwood,* 17 Ill 2d 23; *Commonwealth v Tarver,* 369 Mass 302, 309-311; *State v Baldwin,* 47 NJ 379; *State v Vargus,* 118 RI 113, 125-127)."

There was testimony by experts in the field at the hearing

directed by us describing in detail the kind of tests and comparisons which may be made of the hair samples and the scientific basis for the validity of the conclusions that can be reached as the result of the tests and comparisons.

Prima facie, at least, the use of the opinion evidence based on the comparison of hair samples was established at the hearing. That, we think, is enough to justify the original direction of the court that the petitioner be subjected to the procedure removing the hair sample from his head. At the same time, we are not determining at this point that the Judge presiding at the trial of the petitioner should not consider objections to the admissibility or weight of the evidence proffered, according to the circumstances. In short, the evidence based on the hair samples should be evaluated as to weight and admissibility by the same standard generally applicable to opinion testimony.

## V

We therefore dismiss the proceeding, without costs, and deny the petition seeking prohibition of the order of the Supreme Court.

DAMIANI, TITONE and O'CONNOR, JJ., concur.

Application denied and proceeding dismissed on the merits, without costs or disbursements.