■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL J. RANDT, Appellant.—Appeal by the defendant from a judgment of the County Court, Rockland County (Meehan, J.), rendered January 10, 1984, convicting him of rape in the first degree and assault in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial (Edelstein, J.), after a hearing, of those branches of the defendant's omnibus motion which were to suppress his statements to law enforcement authorities and physical evidence.

Ordered that the judgment is affirmed.

On November 25, 1981, the then 19-year-old complainant had Thanksgiving dinner with her family. After dinner, she and a girlfriend went to a local bar to socialize with friends. At the bar she met the defendant whom she had known since the eighth grade but whom she had not seen for three years. They had a drink and conversed together. When the complainant announced that she was leaving to go to a social club owned by some of her friends, the defendant asked if he might accompany her. They discovered that the club was closed and the complainant began to drive the defendant home but he told her that he would like to drive around for a little while. They drove to an overlook and parked. The complainant willingly kissed the defendant but when he attempted to touch her breasts she rebuffed him and told him to stop. He then pulled his pants down and asked "Is this what you want?" The complainant said no and attempted to exit the vehicle but the defendant pulled her back inside and began to choke her. Eventually she lost consciousness and her last recollection was being punched in the face.

The complainant's next memory was of being in her car in front of the defendant's home. He was saying to her "Look what I did to you" but he exited when she promised not to tell anyone what he had done. The complainant did not recall how she arrived home but remembered standing in her father's bedroom telling him she thought she had been raped. Her face was grossly swollen and bleeding and she was crying hysterically. Her clothing was torn and in disarray.

When the police arrived the complainant kept repeating that "Michael Randt" had done this to her. She required surgery for a broken jaw. The treating physician at the hospital testified that he observed a prominent reddening of the internal vaginal area and the presence of a mucoid substance in the vagina which appeared to be fresh semen. The "PAP" smear taken as part of the rape test showed recent sperm deposits and testimony was elicited that the seminal fluid found on the victim's pants was consistent with the defendant's genetic factors which only occur in less than 1% of the population.

Addressing the defendant's first contention, we agree with the hearing court which found that there existed sufficient probable cause to effect the defendant's arrest for assault. Both a police officer and an investigator from the District Attorney's office testified that they observed the complainant's

physical appearance and were told by her that the defendant had caused her injuries. Therefore, the police possessed sufficient information upon which to conclude that a crime had been committed and that the defendant was responsible *(see, People v Crosby,* 91 AD2d 20, *lv denied* 59 NY2d 765).

It is well established that the search of a person incident to a lawful arrest constitutes a valid exception to the Fourth Amendment's requirement of a search warrant and such a search is not limited to weapons or contraband but may also be directed toward the preservation of evidence *(see, People v Belton,* 55 NY2d 49, 52-53, *rearg denied* 56 NY2d 646). With respect to the pubic hair combings which were taken from the defendant following his arrest for assault but before the rape charge was lodged against him, suppression of this physical evidence was properly denied as the evidence sought (pubic hairs of the victim) could have fallen off or been destroyed by the defendant before a search warrant could have been obtained. We conclude that this combing constituted a minimal intrusion and a valid search incident to a lawful arrest.

Pursuant to CPL 240.40 (2) the courts are empowered to order physical evidence to be taken from a defendant's person in a manner which does not involve an unreasonable intrusion or a serious risk of physical injury. The victim suffered a bite mark which was photographed by the investigator from the District Attorney's office and the People informed the court that a forensic odontologist had examined the photographs and could determine whether the bite had been inflicted by the defendant. Since the People established that there existed probable cause to believe that the defendant had committed the crime of rape, that relevant evidence would be found, that the method to obtain the evidence was safe and reliable, that the evidence was important to the investigation owing to the victim's lapses of memory, and that no less intrusive methods existed to obtain the evidence, we conclude that the court-ordered dental examination was proper *(see, Matter of Abe A.,* 56 NY2d 288; *Matter of Barber v Rubin,* 72 AD2d 347).

We reject the defendant's argument that equivocal statements made following his arrest should have been suppressed. The decision to credit the testimony of several police officers over that of the defendant as to the time of the administration of the *Miranda* warnings was a matter for the hearing court and we do not find that its conclusion was erroneous *(see, People v Prochilo,* 41 NY2d 759; *People v Armstead,* 98 AD2d 726).

Although a defendant's right to counsel attaches immedi-

ately when the police know or should have known that the defendant was represented by counsel on an unrelated charge *(see, People v Colwell,* 65 NY2d 883; *People v Bartolomeo,* 53 NY2d 225), this rule does not apply once a final disposition has been made of the prior unrelated charge. The defendant herein had been previously arrested by the same police department and arraigned in the same court but pleaded guilty to attempted sexual misconduct and was sentenced on that count on November 16, 1982, 10 days prior to the present arrest. Even if the police had been aware of the prior charges and the fact that he had been represented by an attorney at that time, this earlier matter had been finally adjudicated. As the defendant was not represented by counsel on a pending charge at the time of his arrest, there was no requirement that counsel be present for him to effectively waive his rights *(see, People v Heller,* 99 AD2d 787).

In the instant case, since the victim suffered from partial amnesia and physical trauma, it was not error for the court to allow expert psychiatric testimony as to posttraumatic stress disorder to enable the jury to understand how the victim remembered only certain events and could not recall the trip from the overlook to the defendant's home and then to her home. It is well established that the admissibility and bounds of expert testimony are addressed to the sound discretion of the trial court and opinion testimony of an expert witness is admissible when the conclusion to be drawn from the facts depends upon specialized knowledge or skill not within the range of ordinary knowledge *(People v Cronin,* 60 NY2d 430).

Viewing the evidence in the light most favorable to the prosecution *(People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]).

We have examined the defendant's remaining contentions and have found them to be either unpreserved for appellate review or without merit. Thompson, J. P., Spatt, Sullivan and Harwood, JJ., concur.