In the Matter of JAMES N., Petitioner, v MICHAEL L. D'AMICO, as Judge of the Erie County Court Eighth Judicial District, et al., Respondents.

Fourth Department, July 7, 1988

### APPEARANCES OF COUNSEL

*Joel L. Daniels (Rosemarie A. Wyman* and *Leigh E. Anderson* of counsel), for petitioner.

*Richard J. Arcara, District Attorney,* respondent *pro se.*

*Robert Abrams, Attorney-General (Paul McCarthy* of counsel), for Michael L. D'Amico, respondent.

### OPINION OF THE COURT

DENMAN, J. P.

In this original CPLR article 78 proceeding in the nature of prohibition, petitioner challenges a determination of respondent County Judge D'Amico which granted the application of respondent District Attorney for an order directing petitioner to provide a dental cast impression to aid authorities in investigation of a homicide. Petitioner concedes that the court had jurisdiction to hear the application but contends that the court exceeded its jurisdiction because the District Attorney failed to establish probable cause that petitioner committed the crime *(see, Matter of Abe A.,* 56 NY2d 288). We need not address the probable cause issue because we determine that prohibition does not lie to obtain collateral review of an order directing a suspect to supply corporeal evidence.

The ancient writ of prohibition is an "extraordinary" remedy whose availability to review a ruling in a criminal proceeding is severely circumscribed *(see, Matter of Holtzman v Goldman,* 71 NY2d 564, 569; *Matter of State of New York v King,* 36 NY2d 59, 62-64). An application by the District Attorney to compel an individual to supply corporeal evidence is a criminal proceeding *(Matter of Santangello v People,* 38 NY2d 536, 538; *Matter of Alphonso C. [Morgenthau],* 38 NY2d 923, 924-925; *see,* CPL 1.20 [18] [b]). Prohibition is available only where there is a clear legal right to such relief, and then only where a court acts or threatens to act either without jurisdiction or in excess of its authorized powers *(Matter of Holtzman v Goldman, supra; Matter of Rush v Mordue,* 68 NY2d 348, 352). Prohibition does not lie to correct a mere error of law, however egregious the error and however cleverly it may be characterized as an excess of jurisdiction or power *(Matter of Rush v Mordue, supra,* at 353). Although the distinction is not easily made between mere errors of law and actions in excess of the court's powers, abuses of power may be identified by their impact upon the entire proceeding, as

distinguished from substantive or procedural errors committed within a proceeding which is properly maintained *(Matter of Holtzman v Goldman, supra; Matter of Rush v Mordue, supra,* at 357; *Matter of State of New York v King, supra,* at 64).

"Even in those rare circumstances where an arrogation of power would justify burdening the judicial process with collateral intervention and summary correction, the writ of prohibition nonetheless does not issue as of right, but only in the sound discretion of the court" *(Matter of Rush v Mordue, supra,* at 354). Factors which enter into that exercise of discretion include the gravity of the harm which would result from the order challenged and whether the remedy of prohibition will completely and efficaciously rectify that harm *(Matter of Rush v Mordue, supra).* Additionally, the writ of prohibition does not lie where another remedy is available, of which appeal is but one *(see, Matter of Lipari v Owens,* 70 NY2d 731, 732-733; *Matter of State of New York v King, supra,* at 62). Moreover, even where appeal might not be available, there is a strong policy against the proliferation of litigation in criminal matters because it frustrates their speedy determination *(Matter of State of New York v King, supra,* at 63-64).

Applying those principles, we conclude that, because the order challenged is equivalent to the issuance of a search warrant *(see, Matter of Abe A., supra,* at 294), use of the writ of prohibition would violate the well-established rules governing use of the writ and defeat the underlying policies of limiting proliferation of litigation in criminal cases and avoiding consequent delays in investigation and prosecution. Judge D'Amico had jurisdiction to entertain an application by the District Attorney for an order directing petitioner to supply corporeal evidence and was empowered to make a probable cause determination within the context of that application *(see, Matter of Abe A., supra;* CPL 240.40 [2]). Petitioner's challenge to the order—that it was issued on less than probable cause—merely asserts a substantive error of law and does not demonstrate, as would be required to sustain the petition, that the court exceeded its power. This is not one of "those rare circumstances where [there has been] an arrogation of power [which] would justify burdening the judicial process with collateral intervention and summary correction" *(Matter of Rush v Mordue, supra,* at 354).

The harm sought to be prevented, that petitioner submit to a dental cast impression, does not justify issuance of the extraordinary writ. Judge D'Amico found that the procedure

is safe and the intrusion minimal, and petitioner does not challenge those findings. Generally, the ordeal of a criminal trial and possibility of conviction are insufficiently harmful to warrant use of the writ *(Matter of Rush v Mordue, supra,* at 354; *Matter of Dondi v Jones,* 40 NY2d 8, 14). Finally, the order, like any probable cause determination, may be challenged by a suppression motion and reviewed on direct appeal if petitioner is convicted *(see, e.g., People v Casadei,* 66 NY2d 846, 847).

Although we recognize that the Court of Appeals in *Abe A.* alluded to use of an article 78 proceeding to challenge an order directing petitioner to supply corporeal evidence *(see, Matter of Abe A., supra,* at 296, n 3), we conclude that the court's dictum must give way to the overriding policies of discouraging piecemeal appeals in criminal proceedings and preventing consequent delays in prosecution. Indeed, this article 78 proceeding has resulted in a six-month delay in this investigation. For the same reasons, we reject the holdings of the Second and Third Departments in *Matter of David M. v Dwyer* (107 AD2d 884) and *Matter of Barber v Rubin* (72 AD2d 347) permitting a collateral challenge to corporeal evidence orders by writ of prohibition. In *Matter of Barber v Rubin (supra),* cited favorably by the Court of Appeals in *Abe A.,* the Second Department permitted collateral review of a corporeal evidence order made in a pending criminal prosecution *(Matter of Barber v Rubin, supra,* at 349-351). In the context of that case, the order was equivalent to an order directing discovery *(see,* CPL 240.40 [2]). Permitting collateral review of a discovery order is totally at odds with standard criminal procedure. Consequently, we do not approve the liberal use of the writ of prohibition sanctioned by the court in *Barber.* To the extent our decision in *Matter of Gary S. v Houston* (92 AD2d 749) is inconsistent with our holding here, that decision is overruled.

The concurring opinion equates a court's determination which is not supported by probable cause with an act in excess of the court's jurisdiction. Employing that rationale, we would review any probable cause determination by means of a writ of prohibition. All orders authorizing searches and seizures, which the subject order is *(Matter of Abe A., supra,* at 294; CPL 690.05 [2]), must be supported by probable cause but the means of reviewing that determination is provided exclusively by statute *(Matter of State of New York v King, supra,* at 63).

Accordingly, the petition should be dismissed.

BOOMER, J. (concurring). Petitioner seeks a judgment of this court pursuant to CPLR 7803 (2) prohibiting the County Judge and the District Attorney from compelling him to provide a cast of an impression of his teeth for use in the investigation of a homicide. Petitioner alleges that the court acted in excess of its power because it issued the order in the absence of a showing of probable cause to believe that petitioner had committed the crime being investigated *(see, Matter of Abe A., 56 NY2d 288)*. "When a petitioner seeks relief in the nature of prohibition pursuant to CPLR 7803 (2), the court must make a two-tiered analysis. It must first determine whether the issue presented is the type for which the remedy may be granted and, if it is, whether prohibition is warranted by the merits of the claim." *(Matter of Holtzman v Goldman,* 71 NY2d 564, 568.)

In *Matter of Abe A. (supra),* the Court of Appeals, confronted with the question of the court's power to compel a suspect in a criminal investigation to provide the authorities with corporeal evidence in the form of a sample of his blood, determined that the court did have such power, but only if a "stringent standard" were met. Included in this standard is the requirement that the People establish "probable cause to believe the suspect has committed the crime" *(Matter of Abe A., supra,* at 291). Here, the majority has determined that it is not necessary to reach the issue of whether the standard set forth in *Matter of Abe A. (supra)* had been met, because even if the People had failed to make a showing of probable cause, the petition must be dismissed because the issue presented is not of the type for which the remedy of prohibition may be granted.

The principles governing the use of the writ of prohibition are easy to recite but, at times, exceedingly difficult to apply. The ancient writ is an extraordinary remedy, and to avoid the "incessant interruption of pending judicial proceedings" it should be sparingly used *(Matter of Rush v Mordue,* 68 NY2d 348, 353). It is available only to prevent a court from acting without jurisdiction or in excess of its power and not to correct errors of law, however egregious. But every act in excess of the court's power of necessity involves an error of law, and it is often difficult to discern the line between those errors of law that are not reviewable by a proceeding in the nature of prohibition and those that are so reviewable because they may be characterized as acts in excess of the court's

power *(La Rocca v Lane,* 37 NY2d 575, 580, *cert denied* 424 US 968).

It has been said that actions in excess of power "may be identified by their impact upon the entire proceeding as distinguished from an error in a proceeding itself proper" *(Matter of Holtzman v Goldman,* 71 NY2d 564, 569, *supra; see also, Matter of State of New York v King,* 36 NY2d 59, 64), but this test cannot be applied neatly to the facts in all of the reported cases. In *La Rocca v Lane* (37 NY2d 575, *supra),* the Court of Appeals held that a prohibition proceeding would lie to review the action of a trial court in a criminal case in preventing the defense attorney, who was a Roman Catholic priest, from wearing his clerical garb during the trial. The trial court's ruling in that case did not affect the entire proceeding because the outcome of the trial did not necessarily depend upon the garb worn by defendant's attorney. Nevertheless, the remedy of prohibition was available because the petition presented a substantial claim that the court "exceeded its powers because of a collision of unquestioned constitutional principles" *(La Rocca v Lane, supra,* at 581), and no other adequate remedy was available.

Here, an argument may be made that the error alleged by petitioner affected the entire proceeding "in the most conclusive manner" *(Matter of Holtzman v Goldman, supra,* at 570), for without a showing of probable cause the court had no power to issue the order. But prohibition may lie whether or not the error of law may be linguistically categorized as an error "which affects the entire proceeding." "The law generally and the extraordinary remedy of prohibition has not developed as a linguistic exercise but as a response in language and concept to the recognized needs and accommodations in a society governed by the rule of law * * * To eliminate or minimize the concept of an excess of power, on presumed verbalistic grounds, would undermine a common-law principle of ancient standing and the continuous statutory statement of that principle". *(La Rocca v Lane,* 37 NY2d 575, 581, *supra.)*

The writ "has evolved into a basic protection for the individual in his relations with the State" *(La Rocca v Lane, supra,* at 578). Thus, even though the error of law complained of will not affect the entire proceeding, prohibition will lie to prevent the State from violating the individual's constitutional right to free exercise of religion *(La Rocca v Lane, supra)* and, as here, from violating the individual's constitutional right to

freedom from unreasonable corporeal searches and seizures *(see, Matter of Barber v Rubin,* 72 AD2d 347, cited with approval in *Matter of Abe A.,* 36 NY2d 288, 296, *supra; see also, Matter of David M. v Dwyer,* 107 AD2d 884; *Matter of Brown v Monserrate,* 101 AD2d 674; Note, *Detention to Obtain Physical Evidence Without Probable Cause,* 72 Colum L Rev 712, 736).

The principal rationale for the holding of the majority that the writ of prohibition will not lie to review issues of this type is that the order sought to be reviewed is equivalent to a search warrant and collateral or interlocutory review of a search warrant is impermissible. It is true that in the usual case there is no collateral or interlocutory remedy to review the issuance of a search warrant. A person affected by the issuance of a search warrant may move to suppress the evidence obtained by the use of the warrant and, if unsuccessful, appeal from a judgment of conviction. In the usual case, exigent circumstances, such as the danger of destruction or removal of the evidence, will excuse the necessity of notice to the suspect of the application for the warrant. But where, as here, there are no exigent circumstances, the application must be brought on notice to the suspect. "After all, when frustration of the purpose of the application is not at risk", due process requires "that the target of the application be afforded the opportunity to be heard in opposition before his or her constitutional right to be left alone may be infringed" *(Matter of Abe A., supra,* at 296). Moreover, it has been held that in such case due process also requires that appellate review or its equivalent be made available before submission to the intrusion *(United States v Crowder,* 543 F2d 312, 316, *cert denied* 429 US 1062; *see, Matter of Abe A., supra,* at 296, n 3).

In determining whether the remedy of prohibition should lie to review acts of a court in granting search warrants or their equivalent, there is a clear distinction to be made between cases where the search has already been conducted, as in the case of an ordinary search warrant, and those cases, such as here, where the court has ordered an intrusion upon the body of an individual and that intrusion has not yet taken place. After a search warrant has been executed, there is no remedy, not even prohibition, that can fully redress any unconstitutional invasion of an individual's right to freedom from unreasonable searches and seizures. Where, however, a bodily intrusion has not yet taken place and there are no circumstances justifying immediate action, the interest of the individual far

outweighs the interest of the State and prohibition should lie to prevent the intrusion from taking place where that intrusion is in clear violation of the Constitution.

Another rationale for the majority's holding that prohibition will not lie in cases of this type is that review of the order is available to petitioner by making a motion to suppress the evidence obtained and, if the motion is denied, by appealing following conviction. Although prohibition will not lie where other adequate remedies are available, here the other available remedies are not adequate.

Petitioner may never be charged with the crime under investigation and thus he may not have the opportunity to move to suppress the evidence. Moreover, if there is no reasonable cause to believe that petitioner has committed the crime under investigation, there is no reason why he should suffer an intrusion upon his person. The law ought to be concerned with the protection of the constitutional rights of the innocent and only when there is an initial indication of guilt does the right of the State to further its investigation outweigh the interest of the individual in freedom from search and seizure and only then should the intrusion be allowed to proceed.

I, too, share the concern of the majority that the use of the writ of prohibition in these circumstances might result in extensive delay in criminal investigations. Although the delay in this case from the time of the issuance of the order has been more than six months, that delay need not have occurred. Here, even though I conclude that the inquiry at the first tier should be answered in favor of petitioner, after a review of the merits, I agree with the majority that the writ should not be issued and that the petition should be dismissed.* The fact that petitioner sought review pursuant to CPLR 7803 (2) did not stay the enforcement of the order. Because petitioner had not obtained a stay of the enforcement of the determination under review as authorized by CPLR 7805, he was obligated to comply with the order. Thus, delays

---

* The record shows that petitioner chased the decedent for the purpose of retrieving a ten dollar bill that the decedent had stolen from him; that petitioner was alone with the decedent at the time of his death; and that the decedent's pocket had been turned inside out. Further, in contradiction to petitioner's statement to the police that neither he nor anyone else had assaulted the decedent, the autopsy report indicated that the decedent had been beaten several times about the head and neck with a blunt instrument and had sustained teeth marks to his right hand and forearm.

such as this ought not be occasioned by the pendency of meritless applications for writs of prohibition; stays of the enforcement of the orders should not be granted except upon the showing of a probability of success on the merits of the proceeding. Where, however, a petitioner makes such a showing by demonstrating, for example, that the People have failed to prove the existence of probable cause to believe that petitioner has committed the crime being investigated, a stay should be granted. Any reasonable delay resulting from the stay is justified to protect petitioner from the threatened intrusion upon his person caused, probably, by erroneous action taken by the court in excess of its power. That delay can and should be minimized by conditioning the stay upon an early hearing on the petition (see, CPLR 2214, 7804 [c]; 7805).

For the foregoing reasons, I conclude that the writ of prohibition should lie in cases of this type to protect fundamental constitutional rights of the individual. Nevertheless, the writ should be sparingly used and only where there is a clear showing that the court acted in excess of its power by issuing an order for corporeal evidence in disregard of the stringent standard prerequisite to its issuance. The pendency of the proceeding for a writ of prohibition ought not impede a criminal investigation by delaying the execution of an order properly issued, because a stay of execution should not be granted absent a showing of probability of success on the merits of the proceeding.

LAWTON and DAVIS, JJ., concur with DENMAN, J. P.; BOOMER and PINE, JJ., concur in an opinion by BOOMER, J.

Application denied and petition dismissed, without costs.