OPINION OF THE COURT
Anthony J. Paris, J.
Petitioners filed an order to show cause and petition with the Onondaga County Clerk on June 21, 2004, seeking an order pursuant to CPLR article 78 granting review of respondent Judge McKinney’s order, dated June 8, 2004. Respondent McKinney’s order directed petitioner Oglesby to comply with McKinney’s decision, dated May 21, 2004. Petitioners seek relief from this court prohibiting respondent McKinney from directly or indirectly enforcing that portion of the order that directs compliance with the May 21, 2004 decision. An amended order to show cause, which provided for an alternate method of service upon respondent Bradwell, was filed on June 23, 2004.
Thereafter, on June 29, 2004, respondent Bradwell filed a response to petition, and the Office of Court Administration, by and through Shawn Kerby, Esq., filed an affidavit and an amicus curiae brief. On July 2, 2004, petitioners filed a reply to respondent Bradwell’s response to petition. On July 30, 2004, respondent McKinney filed a motion to dismiss, pursuant to CPLR 7804 (f) on various grounds including that petitioners have failed to set forth a claim which meets the requirements for an article 78 special proceeding seeking prohibition. Respondent McKinney also filed a memorandum of law, dated July 30, 2004.
Petitioner Oglesby filed a responding affidavit, dated August 2, 2004, and petitioner Fitzpatrick filed a responding affirmation by and through Victoria M. White, Senior Assistant District Attorney, on August 4, 2004. Respondent Bradwell filed a further response to petition on August 6, 2004.
*907 On October 21, 2004, the New York State Association of Criminal Defense Lawyers filed a motion seeking permission to file an amicus curiae brief in opposition to the motion for writ of prohibition.
By decision and order on motion, dated October 29, 2004, this court denied respondent McKinney’s motion to dismiss the petition and directed respondent McKinney to file an answer to the petition.
Thereafter, on November 3, 2004, the court granted the New York State Association of Criminal Defense Lawyers’ unopposed motion for leave to submit its amicus curiae brief.
On November 9, 2004, respondent McKinney filed a motion to reargue, a verified answer and a memorandum of law in opposition to petition and in support of motion to reargue. The petitioners filed a reply to the verified answer on November 15, 2004, together with petitioner Fitzpatrick’s brief in reply to brief of amicus curiae submitted by the New York State Association of Criminal Defense Lawyers.
The parties and/or their respective attorneys have appeared before the court on June 30, 2004, August 25, 2004 and November 3, 2004. Counsel and petitioner Oglesby appeared again on November 17, 2004, at which time the court denied respondent McKinney’s motion to reargue and entertained additional oral arguments in support of and in opposition to the petition.
Petitioners contend that there is no statutory or common-law authority for respondent Syracuse City Court Judge Langston C. McKinney’s order which directed petitioner Sidney Oglesby, as Onondaga County Commissioner of Jurors, to return a jury panel for the trial of the case of People v Bradwell consisting exclusively of City of Syracuse residents culled from the randomly selected general county pool. Petitioners submit that, pursuant to Judiciary Law § 502 (c), petitioner Oglesby has a duty to administer the jury system for all of the courts of the County of Onondaga. Further, respondent Bradwell never demonstrated any prejudice from petitioner Oglesby’s process of randomly drawing jury panels for service in Syracuse City Court from the countywide pool. Moreover, respondent McKinney’s decision granting respondent Bradwell’s jury challenge did not find any causal link, systematic, purposeful or otherwise, between the random selection of prospective jurors from a countywide pool and any articulated prejudice to respondent Bradwell.
*908 Petitioners submit that respondent McKinney does not have the authority to make or amend the laws or rules involving jury selection as this authority is vested in the Legislature which has delegated the authority to promulgate rules to the Chief Administrative Judge. Petitioner Oglesby is responsible for administering the rules for jury selection and insuring the integrity of the countywide pool for other courts as part of his enumerated duties as the Commissioner of Jurors. Petitioners argue that, by virtue of his decision and subsequent order, respondent McKinney has violated the principles of separation of powers which are the foundation of our system of government.
In addition, petitioners argue that respondent McKinney does not have the authority to issue an order of mandamus compelling a government official, not a party to an action pending before him, to perform his duties in a particular fashion. Simply, it is not proper for respondent McKinney to usurp the discretionary authority of petitioner Oglesby. Equally as important, petitioner Fitzpatrick is charged with conducting grand jury proceedings and prosecuting crimes. Petitioner submits that, as the District Attorney, petitioner Fitzpatrick has a legitimate, enforceable interest in maintaining the integrity of all criminal proceedings within the county.
Petitioners urge that discharging otherwise eligible jurors based exclusively on residency would be in direct violation of the stated purpose of Judiciary Law § 500 that all eligible citizens shall have the opportunity to serve.
Petitioner Oglesby notes that the community from which all Syracuse City Court jury panels have traditionally been drawn is the County of Onondaga. This has been the policy of the Commissioner of Jurors both before and during petitioner Ogles-by’s tenure. Petitioner Oglesby expresses deep concern about the negative effects that a process of siphoning city residents from the countywide pool would have on the geographic areas represented in the countywide pool and the adverse impact such a process would have on the legality of any petit or grand jury drawn from that pool. Petitioner Oglesby submits that the random selection of jury panels from the entire county is both statutorily and constitutionally sound.
In opposition to the petition, respondent McKinney argues that petitioners cannot use the writ of prohibition as a means to collaterally review the merits of his decision. Respondent submits that the writ of prohibition cannot be used to correct or prevent the alleged errors of substantive law or procedure.
*909 Respondent McKinney urges this court to mimic the findings in Matter of State of New York v King (36 NY2d 59 [1975]), which denied a writ of prohibition of a trial court’s pretrial decision to grant a different number of peremptory challenges to the defense than were granted to the prosecution. Respondent McKinney argues that, in any event, his decision with respect to the jury panel selection process to be utilized did not implicate the legality of the entire proceeding and, therefore, a writ of prohibition should not issue.
Respondent McKinney submits that Criminal Procedure Law § 360.15 gives him the sole duty and authority to determine whether there are any infirmities with the proposed panel in the case of People v Bradwell and to order the return of a new panel if the evidence demonstrated a substantially prejudicial legal flaw in the jury selection process.
In addition, respondent McKinney denies that he issued a writ of mandamus to petitioner Oglesby, and sets forth the following affirmative defenses to the petition: (1) petitioners may not challenge respondent McKinney’s order by use of a CPLR article 78 proceeding; (2) petitioners lack standing to maintain this proceeding; (3) petitioner Oglesby lacks the capacity to bring this special proceeding; (4) petitioner Oglesby may not appear as counsel for the Onondaga County Commissioner of Jurors since he holds no license to practice law in the State of New York; (5) respondent McKinney has the jurisdiction and authority pursuant to Criminal Procedure Law § 360.15 and Judiciary Law § 500 to order the Commissioner of Jurors to return a jury panel in conformance with applicable law; and (6) petitioners have failed to join the Office of Court Administration as a necessary party and the proceedings should, therefore, be dismissed.
Finally, respondent McKinney submits that, in arriving at his decision concerning the jury challenge, he was engaging in his most basic function as a Judge of the City Court — interpreting the meaning of and applying the pertinent statutes.
Respondent Bradwell submits that Criminal Procedure Law § 360.15 specifically grants a statutory right to defendants to challenge a panel of prospective jurors drawn and returned in a local criminal court. Respondent Bradwell contends that neither petitioner Oglesby nor petitioner Fitzpatrick has demonstrated any harm that will result from the enforcement of respondent McKinney’s decision and order. Criminal Procedure Law § 360.15 grants the local criminal court the authority to dis *910 charge a jury panel and to order the return of a new panel in conformity with its determination.
Respondent Bradwell submits that he was statutorily allowed to challenge for cause any juror residing outside the City of Syracuse and that respondent McKinney has the authority to dismiss any prospective juror for cause. Further, respondent McKinney has legitimately and properly interpreted Judiciary Law § 500 to require that jurors must reside within the geographical jurisdiction of the court.
In the decision and order on motion, dated October 29, 2004, this court determined that petitioners have standing and the capacity to bring this article 78 proceeding, and they are not estopped from challenging respondent McKinney’s order. In addition, the court has denied the respondent’s motion to dismiss for failure to join the Chief Administrator of the Courts as a necessary party to this proceeding.
The court has reviewed the petition and answer, all affidavits, memoranda of law, amicus curiae briefs, written submissions and exhibits with respect to this matter. In addition, the court has considered and given due deliberation upon all the written and oral arguments presented by counsel and the parties in support of and in opposition to the petition for writ of prohibition. The court finds that petitioner Oglesby is lawfully proceeding pro se in this matter and has not endeavored to engage in the unauthorized practice of law.
Judiciary Law § 500 unequivocally provides that:
“It is the policy of this state that all litigants in the courts of this state entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in the county or other governmental subdivision wherein the court convenes; and that all eligible citizens shall have the opportunity to serve on grand and petit juries in the courts of this state.”
Pursuant to Judiciary Law § 502 (d), the Commissioner of Jurors “shall take any steps necessary to enforce the laws and rules relating to the drawing, selection, summoning and impanelling of jurors.” The “commissioner of jurors shall select the names of prospective jurors, or cause them to be selected, at random from the sources provided in section five hundred six.” (Judiciary Law § 507.) Once drawn for service, trial jurors “may serve as trial jurors in any term or part of the same court when it sits in terms or parts, or in any other court in the same county *911 or in the case of an order issued . . . for an enlarged jury pool, in any court in the same judicial district.” (Judiciary Law § 520 [emphasis added].)
The Commissioner of Jurors is an officer of the courts in the county in which he acts. (Judiciary Law § 502 [c].) As such, he is subject to the provisions of Judiciary Law § 212, which authorizes the Chief Administrator of the Courts to supervise the administration and operation of the Unified Court System. Indeed, the Chief Administrator of the Courts has been empowered by the Legislature to adopt rules and orders regulating practice in the courts. (Judiciary Law § 212 [2] [d].) Nowhere in the Judiciary Law are any of the courts or individual judges thereof, other than the Chief Administrator, empowered to supervise the administration and operation of the jury selection system.
The court recognizes, however, that Criminal Procedure Law § 360.15 (1) provides that:
“A challenge to the [jury] panel is an objection made to the entire panel of prospective trial jurors returned for the trial of the action and may be taken to such panel or to any additional panel that may be ordered by the court. Such a challenge may be made only by the defendant and only on the ground that there has been such a departure from the requirements of the appropriate law in the drawing or return of the panel as to result in substantial prejudice to the defendant.”
In addition, “[a]ll issues of fact and questions of law arising on the challenge must be tried and determined by the court.” (CPL 360.15 [2].) Clearly, while a local criminal court has no authority to supervise the administration or operation of the jury selection system, such a court is vested with the power to review and determine a defendant’s challenge to a jury panel which is returned for service in that court.
The 6th Amendment requires that a jury be selected from a representative cross-section of the community. (Taylor v Louisiana, 419 US 522 [1975].) In order to establish a prima facie case for violation of the fair cross-section requirement under the 6th Amendment, the defendant must show:
“(1) that the group alleged to be excluded is a ‘distinctive’ group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in rela *912 tion to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process” (Duren v Missouri, 439 US 357, 364 [1979]; see also People v Guzman, 60 NY2d 403 [1983]).
It is without question that the presiding judge has the sole jurisdiction, in the first instance, to determine whether a prospective jury panel fairly represents a cross-section of the community. (CPL 360.15 [2].)
In deciding respondent Bradwell’s challenge to the proposed jury panel, respondent McKinney went beyond an assessment of whether the jury panel fairly represented a cross-section of the community and opined “that the ‘community’ contemplated by the Legislature is that portion of the eligible county populace residing within the geographic jurisdiction of the trial court, or within such other area previously designated by the Legislature.” (See respondent McKinney’s decision after hearing, dated May 21, 2004, at 18.) Respondent McKinney further determined that “Judiciary Law, Section 500 effectively limits the courts that can be combined to form a central jury pool to those courts which possess the same geographic jurisdiction in the county.” (See id. at 20.) Finally, respondent McKinney found that “Defendant’s evidence of racial disparity between the City and County is sufficient to meet his burden of proving substantial prejudice were he [is] to be tried by a jury selected from a panel drawn from such locale.” (See id. at 20-21.) However, respondent McKinney specifically declined to reach the constitutional issues presented by respondent Bradwell.
In granting respondent Bradwell’s challenge to the jury panel, respondent McKinney did not find that any particular group was alleged to be excluded or that any such group constituted a “distinctive” group in the community. Nor did respondent McKinney find that the representation of any particular group in the countywide venire is not fair and reasonable in relation to the number of such persons in the community — defined as either the county or the City of Syracuse (the geographic boundaries of the City Court). Moreover, respondent McKinney did not find that underrepresentation of any particular group was due to the systematic exclusion of the group in the jury selection process. Indeed, respondent McKinney wholly declined to address or decide whether there had been a violation of due process based on the absence of a fair cross-section of the community.
*913 Rather, respondent McKinney focused his analysis and resulting conclusions upon the interpretation of the term “community” in Judiciary Law § 500. “It is a basic rule of statutory construction that the courts should avoid judicial legislation, since the Constitution of this state vests the legislative power in the Senate and Assembly; and courts may not legislate under the guise of interpretation of statutes.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 73, at 145-146.) Moreover, “[w]here a statute violates no constitutional limitation the only function of the courts is to enforce it. . . .” (Id. at 154.) “[W]hen the intent of the lawmakers is not in doubt, the courts cannot revise the legislation or do otherwise than to carry out its plain command.” (Id. at 155.) Ultimately,
“[t]he function of the courts is to enforce statutes, not to usurp the power of legislation, and to interpret a statute where there is no need for interpretation, to conjecture about or to add to or to subtract from words having a definite meaning, or to engraft exceptions where none exist are trespasses by a court upon the legislative domain.” (Statutes § 76, at 168.)
Judiciary Law § 500 is plainly entitled “Declaration of policy” and unequivocally recites the policy of the State of New York that all litigants shall have the right to juries selected at random from a fair cross-section of the community in the county or other governmental subdivision wherein the court convenes. The Legislature did not limit the term “community” to only the governmental subdivision wherein the subject court convenes, although it clearly had the authority to do so. Rather, it enacted “county or other governmental subdivision” (id. [emphasis added]). The court recognizes that Uniform Justice Court Act § 1306 specifies the manner in which town and village court juries are to be impaneled. In addition, Rules of the Chief Administrator of the Courts (22 NYCRR) § 128.7 provides that the commissioner of jurors shall maintain qualified lists of town and village residents for jury service in town and village courts. The court finds no parallel provision in the Uniform City Court Act (UCCA). Indeed, while article 13 of the UCCA authorizes a trial by jury and the number of jurors to be seated, it contains no direction that city court juries shall be drawn exclusively from residents of the applicable city. Nor is any such requirement found in the Rules of the Chief Administrator of the Courts. It seems self-evident that the Legislature could have imposed such a requirement if it wanted or intended to do so.
*914 More telling is Judiciary Law § 506 which directs that “[t]he commissioner of jurors shall cause the names of prospective jurors to be selected at random from . . . lists of the residents of the county . . . Section 507 directs that “[t]he commissioner of jurors shall select the names of prospective jurors . . . at random from the sources provided in section five hundred six.” Finally, Judiciary Law § 520 permits trial jurors selected in accord with the provisions of sections 506 and 507 to serve “in any term or part of the same court. . . or in any other court in the same county.”
By defining the term “community” as it is used in Judiciary Law § 500 to require that City of Syracuse jury panels be composed solely of City of Syracuse residents, respondent McKinney effectively ignored the interplay among the various provisions constituting the whole of Judiciary Law article 16. In so doing, he focused his inquiry upon residency rather than the underrepresentation of a distinctive group due to systematic exclusion in the jury selection process, which is the fundamental issue in fair cross-section challenges to proposed jury panels.
CPLR 7803 (2) authorizes a proceeding under article 78 to determine “whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction.” The Court of Appeals has consistently held that “the extraordinary remedy of prohibition lies only where there is a clear legal right, and only when a court . . . acts or threatens to act either without jurisdiction or in excess of its authorized powers in a proceeding over which it has jurisdiction.” (Matter of Rush v Mordue, 68 NY2d 348, 352 [1986]; see also Matter of Schumer v Holtzman, 60 NY2d 46 [1983]; Matter of State of New York v King, 36 NY2d 59 [1975].) The writ of prohibition is available in criminal proceedings but “only when a court exceeds its jurisdiction or authorized power in such a manner as to implicate the legality of the entire proceeding.” (Matter of Rush, supra at 353.) A writ may be granted to restrain an inferior court from exceeding its authorized powers in a matter over which it has jurisdiction. (See Matter of Proskin v County Ct., 30 NY2d 15, 18 [1972]; Matter of Lee v County Ct., 27 NY2d 432, 436-437 [1971], cert denied 404 US 823 [1971].)
Prohibition “will not lie as a means of seeking collateral review of mere trial errors of substantive law or procedure.” (Matter of Rush, supra at 353; Matter of State of New York v King, supra.) Prohibition does not lie, “even if there has been an excess of jurisdiction, if there is available an adequate rem *915 edy, by way of appeal or otherwise.” (Matter of Molea v Marasco, 64 NY2d 718, 720 [1984].)
The court finds that there is no statutory predicate for a direct appeal of respondent McKinney’s order and, therefore, there is no adequate alternative remedy to this article 78 proceeding. (See id.)
The court finds that petitioner Oglesby, as Commissioner of Jurors, has a clear legal right, and in fact duty, to administer the jury system for all of the courts within the County of Onondaga, as well as the grand jury system. Pursuant to Judiciary Law § 502, petitioner Oglesby “shall take any steps necessary to enforce the laws and rules relating to the drawing, selection, summoning and impanelling of jurors.” In accord with the oath of office which he is required to take and file pursuant to Judiciary Law § 505, the Commissioner of Jurors administers the rules which are promulgated by the Chief Administrative Judge.
The court further finds that petitioner Fitzpatrick, as the District Attorney, has the clear legal right and responsibility to preserve the integrity of the entire criminal justice system, including the petit and grand jury process. As the chief litigator for and representative of the People of the State of New York, he has an undeniable interest and a clear legal right to preserve the integrity of the entire jury selection system.
The court finds that respondent McKinney had jurisdiction pursuant to Criminal Procedure Law § 360.15 to review respondent Bradwell’s challenge to the proposed panel. However, respondent McKinney was required to determine whether or not there had “been such a departure from the requirements of the appropriate law in the drawing or return of the panel as to result in substantial prejudice to the defendant.” (Id.) In isolating the term “community” as it appears in Judiciary Law § 500, and creating a definition thereof which is beyond the plain language of the statute, respondent McKinney engaged in legislating — an act well beyond his jurisdiction and his judicial function with respect to the case of People v Bradwell. It cannot be said that respondent McKinney’s interpretation of the term “community” to require that only City of Syracuse residents comprise Syracuse City Court jury panels constitutes a valid exercise of respondent McKinney’s power to control the City Court’s regular business. Rather, respondent McKinney acted in excess of his jurisdictional power by engaging in the act of legislating — a function reserved to the Legislature by the very basic principles of our system of government.
*916 Respondents urge the court to follow Matter of State of New York v King {supra) and deny the writ of prohibition. However, the court does not consider respondent McKinney’s determination concerning the definition of “community” to be a mere trial error of substantive law or procedure. Respondents’ reliance on People v Miller (170 Misc 2d 367 [Rochester City Ct 1996]) to support respondent McKinney’s authority to define “community” so as to limit the composition of the jury panel to City of Syracuse residents is misplaced, in part, insofar as there was never any challenge, article 78 or otherwise, to the Miller court’s ruling. Rather, by in effect rewriting Judiciary Law § 500, respondent McKinney has exceeded his authority and jurisdiction.
This is not a situation wherein one party received more peremptory challenges than the other. {Matter of State of New York v King, supra.) Rather, it is a case wherein a City Court Judge has recognized a right to a specific jury composition where no such right has been explicitly or implicitly granted by the Legislature. As such, it is a situation more akin to granting a defendant the unauthorized inspection of grand jury minutes. {See Matter of Proskin, supra [writ of prohibition granted].)
In addition, the proper composition of the jury, insofar as they will be the triers of fact in the case of People v Bradwell, necessarily implicates the legality of the entire proceeding. The Onondaga County Commissioner of Jurors’ long-standing policy and practice of drawing jury panels from the entire county should be given deference. Respondent McKinney’s attempt, where no constitutional infirmity was found, to direct the manner and method in which Commissioner Oglesby administers the jury system is precisely the type of act, where the very meaning of separation of powers is at issue, which warrants prohibition. (See Matter of Rush, supra.)
Now, therefore, upon due deliberation and for the foregoing reasons, the petitioners’ application for a writ of prohibition is granted and respondent McKinney shall be prohibited from requiring the Onondaga County Commissioner of Jurors, petitioner Sidney Oglesby, to return a panel of prospective jurors for the case of People v Bradwell randomly selected from the qualified residents of the City of Syracuse.