[843 NYS2d 265]

In the Matter of Shamone Neal, Petitioner, v Renee White, as a Justice of the Supreme Court, et al., Respondents.

First Department, October 11, 2007

## APPEARANCES OF COUNSEL

*Law Offices of Glenn R. Abolafia*, New York City (*Glenn R. Abolafia* of counsel), for petitioner.

*Andrew M. Cuomo, Attorney General*, New York City (*Katherine M. Timon* of counsel), for Honorable Renee White, respondent.

*Robert M. Morgenthau, District Attorney*, New York City (*Emily Logue* of counsel), respondent pro se.

## OPINION OF THE COURT

NARDELLI, J.

This is a CPLR article 78 proceeding, in the nature of prohibition and mandamus, in which petitioner Shamone Neal seeks to vacate and prohibit the enforcement of a decision and order of the Supreme Court, New York County (Renee White, J.), entered on or about December 6, 2006, which, inter alia, denied petitioner's motion to dismiss the indictment against her.

Initially, petitioner was arraigned in Manhattan Criminal Court, on February 9, 2006, on charges of assault in the second degree (Penal Law § 120.05 [2]) and endangering the welfare of a child (Penal Law § 260.10 [1], [2]) after it was alleged that she repeatedly struck her then-seven-year old son with a wire cord. The case was adjourned to February 14, 2006 for grand jury action, and was again adjourned to May 22, 2006. Petitioner made her scheduled court appearance on May 22, 2006, and Criminal Court issued a temporary order of protection (TOP), effective from that date to August 24, 2006, which, among other directives, ordered that petitioner stay away from her twin children. The children, pursuant to a corresponding Family Court order, had been removed from petitioner's custody and placed with her sister, Ramona Williams. Criminal Court also adjourned the matter a third time and placed the case on the Part 2F calendar

for August 24, 2006, indicating that if no action was taken by the District Attorney prior to that date, the case would be dismissed as stale.

The current indictment arises out of petitioner's actions on August 14, 2006, when it is alleged that at approximately 8:00 P.M., she entered her sister's apartment, hit one child in the chest, shoved the other, and left the apartment with both children after the Police Department was called. The People contend that a citywide search ensued for more than 24 hours until the children returned to petitioner's sister's apartment, without petitioner, at 10:15 P.M. the following evening. The children reported that petitioner had accompanied them on a bus to a stop approximately one block from the apartment, where she had instructed them to get off the bus and walk home. The children stated that petitioner remained on the bus in order to avoid the police.

Petitioner was subsequently apprehended in the Bronx and was arraigned on a felony complaint on August 16, 2006, charging her with burglary in the second degree, custodial interference in the first degree, criminal contempt in the second degree, reckless endangerment in the second degree, and endangering the welfare of a child. The evidence was thereafter presented to a grand jury on August 22, 2006, which voted an indictment charging petitioner with one count of burglary in the second degree, two counts of custodial interference in the first degree, four counts of criminal contempt in the second degree, and four counts of endangering the welfare of a child.

Petitioner filed an omnibus motion on November 1, 2006, alleging, inter alia, that the indictment should be dismissed because the order of protection, upon which certain charges in the indictment are predicated, was "stale" at the time of the conduct which gave rise to those charges. Petitioner's contentions are based upon the theory that, pursuant to Criminal Procedure Law § 30.30 (1) (a), the People were required to be ready for trial on the original felony complaint on August 9, 2006 and because they were not, the felony complaint, and the associated TOP, were rendered stale as of that date, regardless of the fact that the felony complaint was not dismissed, and the TOP did not expire by its own terms, until August 24, 2006. Petitioner concludes, therefore, that since the actions which form the basis of the current indictment did not occur until after the TOP became "stale" on August 9, 2006, she cannot be prosecuted thereon. Supreme Court disagreed, declined to issue an order

declaring, nunc pro tunc, that the criminal complaint expired on August 9, 2006, and opined that petitioner, if so advised, was free to assert the staleness claim at trial. This article 78 proceeding, seeking to vacate and prohibit enforcement of Supreme Court's order, ensued.

It is settled that prohibition* is an extraordinary remedy which lies only where a clear legal right to such relief exists, and only when a court "acts or threatens to act either without jurisdiction or in excess of its authorized powers" (*Matter of Holtzman v Goldman*, 71 NY2d 564, 569 [1988]; *see also Matter of Lungen v Kane*, 88 NY2d 861, 862 [1996]). Further, it is available only when a court exceeds its jurisdiction in a manner which implicates the legality of the proceeding itself (*Matter of Johnson v Price*, 28 AD3d 79, 82 [2006]; *Matter of Hirschfeld v Friedman*, 307 AD2d 856, 858 [2003]). Indeed, even if an act in excess of power is perceived and prohibition lies, the remedy is not granted as of right, but only in the sound discretion of the reviewing court (*Matter of Holtzman v Goldman*, 71 NY2d at 569; *Matter of Rush v Mordue*, 68 NY2d 348, 354 [1986]).

It is also beyond cavil that prohibition is "*never* available merely to correct or prevent trial errors of substantive law or procedure, however grievous" (*La Rocca v Lane*, 37 NY2d 575, 579 [1975], *cert denied* 424 US 968 [1976] [emphasis added]; *see also Matter of Hirschfeld v Friedman*, 307 AD2d at 858), because "[t]he orderly administration of justice requires that correction of litigation errors merely be left to the ordinary channels of appeal or review. Otherwise one would erect an additional avenue of judicial scrutiny in a collateral proceeding and thus frustrate the statutory or even constitutional limits on review" (*La Rocca v Lane*, 37 NY2d at 579; *see also Matter of Rush v Mordue*, 68 NY2d at 353 ["(u)se of the writ is, and must be, restricted so as to prevent incessant interruption of pending judicial proceedings by those seeking collateral review of adverse determinations made during the course of those proceedings. Permitting liberal use of this extraordinary remedy so as to achieve, in effect, premature appellate review of issues properly reviewable in the regular appellate process would serve only to frustrate

---

* The "ancient and just" writ of prohibition is deeply rooted in the common law and was originally employed by English kings to restrict the powers of ecclesiastical courts over temporal matters, and has since evolved into a means of protection for individuals in their relations with the State (*see Matter of Rush v Mordue*, 68 NY2d 348, 352 n 2 [1986]; *La Rocca v Lane*, 37 NY2d 575, 578 [1975], *cert denied* 424 US 968 [1976]; Wolfram, *The "Ancient and Just" Writ of Prohibition in New York*, 52 Colum L Rev 334, 338-353 [1952]).

the speedy resolution of disputes and to undermine the statutory and constitutional schemes of ordinary appellate review"]).

It is our view, in light of the foregoing, that a writ of prohibition does not lie for several reasons. Initially, petitioner excogitates that the original criminal complaint, and the TOP, became "stale" prior to the purported acts which are the subject of the current indictment and, therefore, Supreme Court acted outside its jurisdiction in denying the motion. These arguments, however, are readily reviewable on direct appeal and are not the proper subject of an article 78 proceeding. Even if petitioner were correct, only part of the current indictment would be open to dismissal, specifically the charges arising out of her alleged violation of the TOP, rendering this the type of "incessant interruption of pending judicial proceedings" (*Matter of Rush v Mordue*, 68 NY2d at 353) which the Court of Appeals has circumscribed. In addition, it has been held that the ordeal of a criminal trial, and the possibility of a conviction are, by themselves, insufficient to warrant the use of a writ (*Matter of Rush v Mordue*, 68 NY2d at 354; *Matter of Dondi v Jones*, 40 NY2d 8, 14 [1976]), a point especially pertinent herein as it appears a criminal trial on the counts not arising out of the alleged violations of the TOP would occur in any event. Nor can petitioner establish that the "legality of the proceeding itself" is in question for the very same reason. Lastly, and not to belabor the point, but even if prohibition did lie to the extent the TOP is "stale," we would decline to exercise our discretion (*see Matter of Holtzman v Goldman*, 71 NY2d at 569; *Matter of Rush v, Mordue*, 68 NY2d at 354) and issue such a writ at this juncture because of the additional charges laid out in the indictment which are unrelated to the TOP and which still must be addressed by Supreme Court.

Petitioner's reliance on *People v Bleau* (276 AD2d 131 [2001]) is misplaced, for in that matter, the court specifically held that "[o]nce a defendant is acquitted or sentenced . . . the criminal action is no longer pending and . . . the temporary order of protection becomes a nullity" (*id.* at 133 [citation omitted]). Here, petitioner has been neither acquitted nor sentenced and while the original criminal complaint and TOP may very well have been subject to dismissal when petitioner elected to forcibly remove her children from her sister's apartment, they were, in fact, still pending and, accordingly, Supreme Court retained jurisdiction and the charges arising out of the purported violation of the TOP are not a nullity (*People v Scott*, 2 AD3d 653 [2003], *lv denied* 2 NY3d 765 [2004]).

In addition to all of the foregoing, and perhaps most significantly, we note that the wellspring out of which all of petitioner's arguments arise is the assertion that the underlying criminal complaint was stale because the People were not ready for trial within six months of the commencement of the action, in violation of CPL 30.30 (a) (1). It has long been held, however, that a writ of prohibition does not lie upon the contention that petitioner was denied his/her right to a speedy trial, notwithstanding whether such claim is based on statutory or constitutional grounds (*see Matter of Rush v Mordue*, 68 NY2d at 354; *Matter of Lopez v Justices of Supreme Ct. of N.Y. County*, 36 NY2d 949 [1975]; *Matter of Brown v Latham*, 12 AD3d 1194, 1196 [2004]; *Matter of Cummings v Koppell*, 212 AD2d 11, 15 [1995], *lv denied* 86 NY2d 702 [1995]; *Matter of Peter v King*, 81 AD2d 672 [1981], *lv denied* 53 NY2d 609 [1981]; *Matter of Valenti v Mark*, 59 AD2d 651 [1977], *lv denied* 43 NY2d 642 [1977]).

Finally, since petitioner has failed to demonstrate a clear legal right to the relief sought, mandamus will also not lie (*see Matter of Legal Aid Socy. of Sullivan County v Scheinman*, 53 NY2d 12, 16 [1981]; *Matter of National Equip. Corp. v Ruiz*, 19 AD3d 5, 15 [2005]).

Accordingly, the petition should be denied and the proceeding dismissed, without costs.

CATTERSON, J. (dissenting). In this CPLR article 78 proceeding, petitioner seeks relief in the nature of prohibition and mandamus. Specifically, petitioner seeks to prohibit enforcement of the written decision of Hon. Renee White, Supreme Court of the State of New York, Criminal Term, Part 62, entered on or about December 6, 2006, denying petitioner's motion to dismiss the indictment against her and directing her to trial on the indictment.

Under the indictment (No. 4341/06), petitioner is charged with one count of burglary in the second degree, two counts of custodial interference in the second degree, four counts of criminal contempt in the second degree and four counts of endangering the welfare of a child. The charges arise out of petitioner's alleged violation of a temporary order of protection (TOP) issued by New York County Criminal Court, Part F, during the pendency of a prior criminal action against petitioner.[1]

---

1. Respondents assert that two of the criminal contempt charges (class A misdemeanors; *see* Penal Law § 215.50 [3]) stem from the petitioner's viola-

162

The prior criminal action was a felony complaint on which petitioner was arraigned in the Criminal Court of the City of New York on February 9, 2006. More than three months elapsed without any prosecutorial action, either grand jury action or reduction of charges to a misdemeanor, on the complaint. On May 22, 2006, the Part F court designated the case for the dismissal calendar in Part 2F and adjourned the matter without objection to August 24, for automatic dismissal. Concomitantly, the court extended the temporary order of protection against petitioner to remain in effect till August 24, 2006.

Petitioner was informed that her felony complaint would be automatically dismissed as "stale" in Part 2F of the Criminal Court, New York County on August 24, 2006 if the District Attorney did not take any action on it by that date.[2] The notice that was issued to petitioner on May 22, 2006 read in relevant part: "Your docket has been adjourned to August 24, 2006 and Your Appearance is Not Required on the Adjourned Date. If no action is taken by the District Attorney prior to the above date, the docket will be dismissed and sealed."

On August 16, 2006, petitioner was arrested for the alleged violation of the TOP after she went to her sister's apartment and took her children out on an unsupervised trip two days earlier. Petitioner was indicted on the charges stemming from the alleged violation on August 22nd. Petitioner filed an omnibus motion before the respondent on November 1, 2006, seeking to dismiss the indictment on the grounds of constitutional infirmities in the statutory scheme that permitted the TOP to survive the effective speedy trial dismissal date of the felony complaint. On or about December 6, 2006, respondent issued a written decision denying the motion to dismiss and directing the case to trial. Petitioner then filed this article 78 petition.

Petitioner asserts that the motion court should be enjoined from directing the indictment to trial since it is based on alleged violations of a TOP that had for all intents and purposes expired at the time of the alleged violations. Further, petitioner

tion of a Family Court order of supervised visitation. However, that order was referenced on the TOP.

**2.** Part 2F of New York's Criminal Court provides an alternative mechanism to that of CPL 180.85 (provision for motion to dismiss felony complaint one year after arraignment) for dismissing stale felony complaints since the option of dismissal under the speedy trial statute, CPL 30.30, is not available for felony complaints.

asserts that the respondent acted in excess of her authority by directing the indictment to trial on the basis of a TOP issued by a court that had also exceeded its authority by extending the TOP to an arbitrary date beyond its effective expiration. Petitioner additionally argues that the extension of the TOP without a hearing on the matter violated her due process and equal protection rights.

Respondent District Attorney argues that an article 78 proceeding in the nature of prohibition is not a proper vehicle for appealing this issue, and that the issue may be resolved on direct appeal following an adverse verdict in the underlying criminal trial. Furthermore, the court's order states that petitioner may raise the issue as a defense at trial.

As a threshold matter, I agree that prohibition is an "extraordinary" remedy and should not generally be used where an issue may be reviewed on appeal or where the "grievance can be redressed by ordinary proceedings at law or in equity." (*Matter of Lee v County Ct. of Erie County*, 27 NY2d 432, 437 [1971] [citations omitted], *cert denied* 404 US 823 [1971].) Nor should it be used where an article 78 proceeding appears to be a substitute for an unauthorized interlocutory appeal. (*See Matter of State of New York v King*, 36 NY2d 59, 62 [1975].)

Nevertheless, the remedy of prohibition is designed to stop and control affirmative acts of a court or public officer which are done in excess of authorized powers. (*See Matter of Rush v Mordue*, 68 NY2d 348, 352-353 [1986].) Moreover, prohibition may lie where "the claim is substantial, implicates a fundamental constitutional right, and where the harm caused . . . could not be adequately redressed through the ordinary channels of appeal." (*Id.* at 354; *see also Matter of Murtagh v Leibowitz*, 303 NY 311 [1951] [criminal action removed from a court when crime could not have been committed in the geographical jurisdiction]; *Matter of Kraemer v County Ct. of Suffolk County*, 6 NY2d 363 [1959] [where defendants were to be prosecuted for a crime for which they could not be constitutionally tried]; *Matter of Lee v County Ct. of Erie County, supra.*)

While I agree that petitioner could raise this issue on direct appeal (*see People v Bleau*, 276 AD2d 131 [2001]), nevertheless if a determination can be made that, as petitioner claims, she was charged with a crime that simply could not have been committed by her, then it would be, at the very least, a waste of judicial resources to require petitioner to go to trial. Moreover, if indeed, petitioner could not have committed the crime, then I

fail to see how going to trial, waiting for a possible conviction and perhaps enduring incarceration could then be "adequately corrected" through the appeal process. (*Cf. Rush v Mordue*, 68 NY2d at 354, citing *Matter of Dondi v Jones*, 40 NY2d 8, 14 [1976].) I therefore find that the issue is of sufficient "magnitude" to consider pursuant to an article 78 prohibition proceeding.

Petitioner correctly asserts that the prior criminal action was no longer effectively pending in Criminal Court on August 9, 2006. Pursuant to CPL 30.30 (1) (a) the People are required to be ready for trial within six months of the commencement of a criminal action in which a felony is charged. (*People v McKenna*, 76 NY2d 59, 62 [1990].) Here, petitioner was arraigned on a felony complaint which commenced the criminal action on February 9, 2006. Thus, the People were required to be ready for trial on August 9, 2006 unless excludable time could be attributed to the People to shorten the period of delay. (*People v Cortes*, 80 NY2d 201, 208 [1992].)

In the instant case, the People were not ready for trial because they did not convert the felony complaint into an indictment, and so were without a jurisdictionally sufficient instrument. (*See People v Cruz*, 123 Misc 2d 316 [1984].) As of August 9, 2006, the People had not taken any grand jury action and so could not obtain an indictment by the requisite time. Additionally, an indictment alone is not enough for the People to be deemed ready for trial if arraignment of the defendant is not possible within the statutory period. (*People v England*, 84 NY2d 1, 5, [1994] [arraignment is an "elemental prerequisite to trial readiness"]; *see also People v Goss*, 87 NY2d 792, 794 [1996].)

Thus, with no indictment or arraignment of the petitioner by August 9, 2006, the criminal action was effectively no longer pending. This necessarily rendered the August 24, 2006 calendar date set for dismissal arbitrary, irrelevant and meaningless.

Because of the statutory framework, while petitioner could have moved to dismiss an *indictment* returned on August 9, 2006, she cannot move to dismiss a *felony complaint* until 12 months after arraignment. There is no provision in CPL 30.30 for a motion to dismiss a felony complaint; the only way to move to dismiss a felony complaint is pursuant to CPL 180.85 effective 12 months after arraignment; the alternative is Part 2F of the Criminal Court of New York City where stale felony

complaints are sent to the elephant graveyard of the dismissal calendar. This is where petitioner's case was sent on May 22, 2006 for eventual dismissal on August 24, 2006.

However, as petitioner correctly asserts, without any further prosecutorial action by August 9, 2006, the case against her could no longer be pending or restored to the calendar given the speedy trial statute. Significantly, respondents do not claim that any such criminal action was pending or could have been pending on August 9, 2006. Nor does either respondent counter petitioner's assertion that the case against her was effectively dismissed as of August 9, 2006. Thus, it is uncontroverted that the court had no jurisdiction over petitioner as of August 9, 2006.

In this case, therefore, in my opinion the crucial question arises as to whether a temporary order of protection can survive beyond the date where all parties agree that a criminal action is no longer pending. Case law is thin on this issue, although *People v Bleau* (276 AD2d 131 [2001], *supra*) is instructive. In that case, defendant argued that a temporary order of protection expired automatically upon the termination of the criminal action from which it arose. Defendant was arrested stemming from an incident involving his ex-girlfriend. As a result, a TOP was issued, scheduled to expire on October 1, 1998. On August 11, 1998, defendant pleaded guilty to a charge of disorderly conduct and harassment of his girlfriend. On September 2, 1998, he was arrested for violating the TOP by contacting the ex-girlfriend. On appeal, defendant argued that his guilty plea terminated the criminal action upon which the TOP had been issued, and therefore the TOP had expired automatically. The appellate court agreed with defendant stating: "the critical factor in issuing a *temporary* order of protection under CPL 530.13 (1) is defendant's status as a charged offender and the pendency of the action." (*Id.* at 133.) The Court found that once a defendant is acquitted or sentenced, the criminal action is no longer pending and without a pending criminal action, a TOP becomes a nullity.

In applying the foregoing rationale to the instant case, since both respondents concede that no criminal action against petitioner was pending as of August 9, 2006, I find that the TOP was a nullity as of that date, and therefore, petitioner could not have violated the TOP on August 14, 2006.

Consequently, I believe the Criminal Court, Part F exceeded its authority in extending the TOP to an arbitrary date that

was irrelevant to the pendency of the prior criminal action, and therefore that the motion court erred in directing petitioner to trial. In my opinion, the motion court should be enjoined from directing petitioner to trial, the decision vacated and the indictment dismissed.

SAXE, J.P., GONZALEZ and SWEENY, JJ., concur with NARDELLI, J.; CATTERSON, J., dissents in a separate opinion.

Petition denied and the proceeding dismissed, without costs.